**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

**MILITARY ORDER OF THE PURPLE**
**HEART SERVICE FOUNDATION, INC.,**

        **Plaintiff,**

v.                              **Case No. 1:12-cv-01483-GLR**

**OTHERS FIRST, INC., and**
**CHARITY FUNDING, INC.,**

        **Defendants.**

**DEFENDANT OTHERS FIRST, INC.'S ANSWER AND COUNTERCLAIM**
**TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Others First, Inc. ("Others First"), by counsel, pursuant to Fed. R. Civ. P. 13, submits this Answer and Counterclaim to Plaintiff Military Order of the Purple Heart Service Foundation, Inc.'s ("Plaintiff") First Amended Complaint ("Amended Complaint").

THE PARTIES

1.      Others First lacks knowledge or information sufficient to admit or deny the allegations contained in paragraph 1 of the Amended Complaint, and therefore must deny the same.

2.      The allegations contained in paragraph 2 of the Amended Complaint are admitted.

3.      Others First lacks knowledge or information sufficient to admit or deny the allegations contained in paragraph 3 of the Amended Complaint, and therefore must deny the same.

## JURISDICTION AND VENUE

4.      The allegations contained in paragraph 4 of the Amended Complaint are legal conclusions to which no response is required.  To the extent a response is required and the allegations are contrary to the law, they are denied.

5.      The allegations contained in paragraph 5 of the Amended Complaint are legal conclusions to which no response is required.  To the extent a response is required and the allegations are contrary to the law, they are denied.

6.      The allegations contained in paragraph 6 of the Amended Complaint are legal conclusions to which no response is required.  To the extent a response is required and the allegations are contrary to the law, they are denied.

7.      The allegations contained in paragraph 7 of the Amended Complaint are legal conclusions to which no response is required.  To the extent a response is required and the allegations are contrary to the law, they are denied.

## STATEMENT OF FACTS

8.      Others First lacks knowledge or information sufficient to admit or deny the allegations contained in paragraph 8 of the Amended Complaint, and therefore must deny the same.

9.      The allegations contained in paragraph 9 of the Amended Complaint are legal conclusions to which no response is required.  To the extent a response is required and the allegations are contrary to the law, they are denied.

10.      Others First lacks knowledge or information sufficient to admit or deny the allegations contained in paragraph 10 of the Amended Complaint, and therefore must deny the same.

11.     Others First lacks knowledge or information sufficient to admit or deny the allegations contained in paragraph 11 of the Amended Complaint, and therefore must deny the same.

12.     The first sentence in paragraph 12 of the Amended Complaint refers to documents which speak for themselves and to which no response is necessary.  To the extent a response is required or the allegations vary from the terms of the documents, they are denied.  The remaining allegations contained in paragraph 12 are conclusions of law to which no response is required.  To the extent a response is required or the allegations are contrary to the law, they are denied.

13.     The allegations contained in paragraph 13 of the Amended Complaint are denied.

14.     The allegations contained in paragraph 14 of the Amended Complaint are admitted.

15.     Others First admits that it is a charitable organization.  The remaining allegations contained in paragraph 15 of the Amended Complaint are denied.

16.     The allegations contained in paragraph 16 of the Amended Complaint are denied.

17.     The allegations contained in paragraph 17 of the Amended Complaint are denied.

18.     The allegations contained in paragraph 18 of the Amended Complaint are denied.

19.     The allegations contained in paragraph 19 of the Amended Complaint are denied.

20.     The allegations contained in paragraph 20 of the Amended Complaint regarding Plaintiff's letter(s) to Others First refer to documents that speak for themselves and for which no response is necessary.  To the extent a response is required or the allegations vary from the documents, they are denied.  The remaining allegations contained in paragraph 20 of the Amended Complaint are denied.

21.     The allegations contained in paragraph 21 of the Amended Complaint are denied.

22.     The allegations contained in paragraph 22 of the Amended Complaint are denied.

23.     The allegations contained in paragraph 23 of the Amended Complaint are denied.

24.     The allegations contained in paragraph 24 of the Amended Complaint are denied.

25.     The allegations contained in paragraph 25 of the Amended Complaint are denied.

COUNT ONE
TRADEMARK INFRINGEMENT
UNDER SECTION 31(a) OF THE LANHAM ACT; 15 U.S.C. § 1114(a)
(Against Defendant Others First, Inc.)

26.     Others First reasserts and incorporates its response to paragraphs 1 – 25 as if fully
set forth herein.

27.     The allegations contained in paragraph 27 of the Amended Complaint are denied.

28.     The allegations contained in paragraph 28 of the Amended Complaint are denied.

29.     The allegations contained in paragraph 29 of the Amended Complaint are denied.

30.     The allegations contained in paragraph 30 of the Amended Complaint are denied.

31.     The allegations contained in paragraph 31 of the Amended Complaint are denied.

COUNT TWO
UNFAIR COMPETITION/DECEPTIVE TRADE PRACTICES
UNDER SECTION 43(a) OF THE LANHAM ACT; 15 U.S.C. § 1125(a)
(Against Defendant Others First, Inc.)

32.     Others First reasserts and incorporates its response to paragraphs 1 – 31 as if fully
set forth herein.

33.     The allegations contained in paragraph 33 of the Amended Complaint are denied.

34.     The allegations contained in paragraph 34 of the Amended Complaint are denied.

35.     The allegations contained in paragraph 35 of the Amended Complaint are denied.

COUNT THREE
COMMON LAW UNFAIR COMPETITION
(Against Defendant Others First, Inc.)

36.     Others First reasserts and incorporates its response to paragraphs 1 – 35 as if fully set forth herein.

37.     The allegations contained in paragraph 37 of the Amended Complaint are denied.

38.     The allegations contained in paragraph 38 of the Amended Complaint are denied.

39.     The allegations contained in paragraph 39 of the Amended Complaint are denied.

40.     The allegations contained in paragraph 40 of the Amended Complaint are denied.

41.     The allegations contained in paragraph 41 of the Amended Complaint are denied.

COUNT FOUR
CIVIL CONSPIRACY
(Against All Defendants)

42.     Others First reasserts and incorporates its response to paragraphs 1 – 41 as if fully set forth herein.

43.     The allegations contained in paragraph 43 of the Amended Complaint are denied.

44.     The allegations contained in paragraph 44 of the Amended Complaint are denied.

PRAYER FOR RELIEF

The allegations contained in the "WHEREFORE" paragraph, including subparagraphs (1) – (6) are denied.  Others First denies that it is liable to Plaintiff in any manner whatsoever under any theory of liability whatsoever for the requests for relief in Plaintiff's Amended Complaint. All allegations not specifically admitted are denied.

AFFIRMATIVE DEFENSES

Defendant Others First asserts the following affirmative defenses without assuming the burden of proof that otherwise rests with Plaintiff.

1.      Plaintiff's Amended Complaint fails to state a claim for which relief can be granted against Defendant Others First and should be dismissed with prejudice.

2.      Plaintiff failed to plead the elements of civil conspiracy and its claim in Count IV of the Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12.

3.      Plaintiff does not have exclusive right to use the term "Purple Heart" at common law in connection with describing fundraising activities on behalf of wounded veterans or recipients of the Purple Heart Medal.

4.      Plaintiff's federal trademark Registration No. 4015788 asserted in the Amended Complaint is invalid and unenforceable and was improperly granted by the U.S. Patent and Trademark Office ("USPTO") and is subject to cancellation on the grounds that "Purple Heart" is a generic for wounded veterans under the authority of an act of Congress, and thus not capable of exclusive appropriation for fundraising on behalf of veterans who have received the Purple Heart Medal.

5.      Plaintiff's federal trademark Registration No. 4015788 asserted in the Amended Complaint is invalid and unenforceable and was improperly granted by the USPTO and is subject to cancellation on the grounds that "Purple Heart" is a generic, or at least merely descriptive of such services and the registration was improperly granted without requiring proof of secondary meaning, no proof of secondary meaning was submitted during prosecution of the application resulting in said registration, and the term has not become distinctive of Plaintiff's fundraising services.

6.      Plaintiff's federal trademark Registration No. 4015788, alleged in the Amended Complaint, is invalid and unenforceable and was improperly granted by the USPTO and is subject to cancellation on the grounds that to the extent that exclusive rights in the term Purple

Heart can be asserts, Plaintiff is not the owner of such right, which is owned by the Military Order of the Purple Heart of the United States of America by virtue of an act of Congress.

7.      Plaintiff's federal trademark Registration No. 4015788 asserted in the Amended Complaint is invalid and unenforceable and was improperly granted by the USPTO and is subject to cancellation on the grounds that Plaintiff's trademark application was based on a fraudulent misrepresentation to the USPTO made with the willful intent to deceive as it was based on and included a declaration that was knowingly false, to the effect that the declarant had "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake or to deceive," which declaration was made in order to obtain registration of the alleged mark PURPLE HEART.

8.      Others First did not participate in any illegal or improper activity in violation of the Lanham Act.

9.      Even if Plaintiff had valid trademark rights in the term "Purple Heart" (which, Others First denies) Others First's use of the term "Purple Heart" does not infringe on any such rights.

10.     Even if Plaintiff had valid trademark rights in the term "Purple Heart" (which, Others First denies), Others First's use of the term "Purple Heart" constitutes fair nominative use because the target recipients (veterans who received the Purple Heart Medal) of such services cannot be readily identified without use of the term "Purple Heart," Others First uses only so much of the terms as is necessary to identify veterans who received the Purple Heart Medal, and Others First in no way suggests sponsorship, affiliation, or endorsement by Plaintiff.

11.     Plaintiff's claims for relief are barred, in whole or in part, as a result of its misuse of the trademarks, acts of unfair competition and anticompetitive behavior consisting of misrepresenting the validity and scope of its asserted fraudulently procured Registration against other entities engaged in fundraising efforts on behalf of recipients of the Purple Heart Medal and other wounded veterans in violation of the Sherman Act § 2 (15 U.S.C. § 2).

12.     Plaintiff's claims are barred, in whole or in part, by waiver or acquiescence because numerous organizations use the phrase "purple heart" in connection with charitable fundraising.

13.     Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel and/or unclean hands.

14.     There is no likelihood of or actual confusion between Plaintiff's and Others First's services to sustain a Lanham Act violation.

15.     Plaintiff has not suffered, and is not subject to the threat of suffering, any irreparable injury or damages arising from the allegations in its Amended Complaint.

16.     Plaintiff has not demonstrated and cannot demonstrate any actual pecuniary loss or damage as a result of Other First's activities.

17.     Others First did not infringe or engage in unfair competition under the common law of Maryland of any other state.

18.     The conduct of Others First alleged in the Amended Complaint is insufficient to state a claim and also unsupported by aggravating circumstances sufficient to show any willful misconduct or other oppressive conduct on the part of Others First required for punitive, enhanced, or treble damages award.

19.     Plaintiff's Complaint fails to state a claim for which permanent injunctive relief may be awarded.  In the alternative, Plaintiff should be denied equitable relief because there is an adequate remedy at law.

20.     Others First incorporates any and all affirmative defenses of the other Defendant as if fully set forth herein.  Others First reserves the right to assert additional defenses as this action progresses.

WHEREFORE, Defendant Others First, Inc., respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice, enter an order awarding Others First its costs and attorneys' fees incurred herein, and grant such further legal and equitable relief as the Court deems appropriate.

## COUNTERCLAIM

Defendant and Counterclaim-Plaintiff Others First, Inc. ("Others First" or "Counterclaim-Plaintiff"), by counsel, pursuant to Fed. R. Civ. P. 13, submits this Counterclaim against Plaintiff and Counterclaim-Defendant Military Order of the Purple Heart Service Foundation ("MOPHSF" or "Counterclaim-Defendant"), and in support thereof states as follows:

1.     This lawsuit arises out of MOPHSF's misuse of the trademark "Purple Heart," acts of unfair competition, and anti-competitive behavior that proposes to punish and restrict efforts to raise charitable donations for the benefit of recipients of the Purple Heart Medal and other wounded veterans.

### JURISDICTION

2.     This Court has subject matter jurisdiction of this Counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338.

3.      This Court has personal jurisdiction over Counterclaim-Defendant based on MOPHSF's consent to jurisdiction in filing its Complaint against Others First in this matter.

4.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in the District of Maryland as the underlying suit presently rests in this District.

PARTIES

5.      Others First is a Michigan 501(c)(3) non-profit organization with its principal place of business at 28345 Beck Road, Suite 100, Wixom, Michigan 48393.

6.      MOPHSF is a Wisconsin corporation with its principal place of business located at 7008 Little River Turnpike #1, P.O. Box 49, Annandale, Virginia 22003.

FACTS

History of the Purple Heart Medal

7.      On August 7, 1782, George Washington created the Badge for Military Merit, a decoration consisting of a purple, heart-shaped piece of silk, edged with a narrow binding of silver with the word "Merit" stitched across the face in silver.

8.      On February 22, 1932, the United States War Department announced the creation of the "Order of the Purple Heart." In addition to aspects of the original design of the Badge for Military Merit, this new Purple Heart medal displays a bust of George Washington and a depiction of his coat of arms.

9.      The Purple Heart medal initially was awarded to recognize meritorious service; however, during World War II, the medal was converted to recognize all combat injuries and deaths.

10.     Over time, the military has further modified the award, adding different types of injuries and different types of combat. For instance, soldiers wounded in acts of terrorism now qualify for the Purple Heart medal, as do soldiers injured in friendly fire.

11.     Today, the Purple Heart is a military decoration awarded in the name of the President of the United States to those who have been wounded or killed while serving on or after April 5, 1917 with the United States military.

12.     Thus, the term "Purple Heart" and the depiction of the Purple Heart medal have come to generically describe recipients of the Purple Heart medal, and they do not function as an indication of origin in a single source of goods or services bearing this term or designation, and the public would not be expected to perceive either the term or the image as an indication that MOPHSF is the source.

<u>History of the Military Order of the Purple Heart</u>

13.     The Military Order of the Purple Heart (the "Order") was chartered by Congress in 1958 for the protection and mutual interest of all who have received the Purple Heart military decoration. See 36 U.S.C. § 1405. It has many local chapters across the United States that, upon information and belief, raise funds and provide programming for the benefit of recipients of the Purple Heart medal.

14.     One statutory purpose of the Order is to "cooperat[e] with other civic and patriotic organizations having worthy objectives." See 36 U.S.C. § 140502(b).  Unlike some other federally charted or recognized organizations, Congress gave no exclusive trademark rights to the Order, including without limitation the purported mark "Purple Heart."

11

15.     According to the Order's website, funds for welfare, rehabilitation, and service work carried on by the Order are derived through, among other things, the collection of used household items, the operation of thrift stores, and through the donation of automobiles.

16.     Counterclaim Defendant MOPHSF is a distinct corporate entity that operates, inter alia, as the Order's fundraising arm. MOPHSF uses pictures of the Purple Heart medal, and words associated with the Purple Heart medal, as part of its fundraising efforts. For example, MOPHSF raises funds from the annual distribution of violets, which it promotes as the official flower of the organization.

17.     MOPHSF reported to the Internal Revenue Service ("IRS") that in FY 2010 and FY 2011 it received contributions and grants totaling $31,907,034 and $40,895,388, respectively.  For the same years, MOPHSF reported total fundraising expenses of $18,962,854 and $22,297,599.

18.     MOPHSF also reported that for those same years, it made grants totaling only $11,776,149 and $14,884,423, of which $9,059,394 and $10,505,369, respectively, was distributed to the Military Order of the Purple Heart of the United States of America (the "Order").

19.     The Order reported that for those same years, it made contributions totaling only $249,000 and $254,500 – less than 3% of the total contributions received by the Order.

20.     Thus, in FY 2010 and FY 2011, the Order made contributions of only 0.7% and 0.6%, respectively, of the total contributions received by MOPHSF from donations solicited under the auspice of helping Purple Heart veterans and their families.

21.     MOPSHF has received an F grade from the American Institute of Philanthropy and its executive director was fired in 2008 for alleged misuse of charity funds.  In September

2011, MOPSHF refused to comply with written requests for information by the BBB Wise Giving Alliance and declined to be evaluated, which BBB Wise Giving Alliance stated "may demonstrate a lack of commitment to transparency…[because] Without the requested information the Alliance cannot determine if this charity adheres to the Standards for Charity Accountability."

22.     Purple Heart Service Foundation, Inc. ("PHSFI") is an affiliate of MOPHSF. According to its Form 990 filed with the IRS, PHSFI's mission is "[t]o raise funds for service, welfare and rehabilitation work in connection with the members of the [Order] who are eligible for membership therein, or any wounded, disabled." But for FY 2010 and FY 2011, PHSFI reported to the IRS that it did not make any grants at all.

23.     Instead, it appears that PHSFI is merely a conduit for MOPHSF to lavish compensation on its own personnel, while keeping those expenses off of its own books of account. Indeed:

> a.     MOPHSF reported to the IRS that in FY 2010 it provided PHSFI with (i) cash grants totaling $975,000, (ii) a loan in the amount of $322,061, and (iii) shared employees. That is all the program service revenue that PHSFI reported to the IRS for FY 2010, and PHSFI reported to the IRS that more than 96% of those funds were used to pay its own functional expenses, including almost $1,000,000 in salaries, compensation and employee benefits.

> b.     MOPHSF reported to the IRS that in FY 2011 it provided PHSFI with cash grants totaling $2,333,055, as well as shared employees. That represents more than 96% of all program service revenue that PHSFI reported to the IRS it "raised" in FY 2011, and PHSFI reported to the IRS that approximately 83% of

funds contributed by MOPHSF went to pay PHSFI's own functional expenses, including more than $1.4 million in salaries, compensation and employee benefits.

### History of Others First

24.     Others First, a 501(c)(3) non-profit organization, utilizes the internet to raise funds for a variety of charitable purposes, including support for our nation's military veterans.

25.     Others First is committed to helping our nation's wounded veterans. Thus, since 2009, Others First has operated a charitable car donation program – "Cars Helping Veterans" – that raises funds for the benefit of veterans, including recipients of the Purple Heart medal. In order to make its mission clear and to disclose the purposes to which donated funds will be put, like many other organizations, including those described herein, Others First fairly and accurately states on its website: "Car Donations for Purple Heart Veterans. Donate your Car, Truck or Van"; to accurately convey its objectives.

26.     In 2011 alone, Others First donated more than $200,000 in contributed funds to the Military Order of the Purple Heart itself, and to various local chapters of the Military Order of the Purple Heart, around the country.

27.     Also during 2011 alone, Others First donated more than $750,000 in contributed funds to other charitable organizations that serve veterans who have received the purple heart medal (and their families), including for example Disabled American Veterans, Wounded Warriors Project, and Paralyzed Veterans of America.

### Events Giving Rise to Counterclaim

28.     On August 23, 2011, MOPHSF registered the "Purple Heart" mark for charitable fundraising (Registration Number 4,015,788), and it thereafter demanded that Others

14

First cease its use of the term (and other confusingly similar terms) and depiction of the medal as part of its efforts to raise funds for the benefit of wounded veterans. MOPHSF made this demand on the purported basis that reference to the medal and its depiction may be used for charitable fundraising purposes only when the fundraising is conducted by the Order or MOPHSF.

29.     The "Purple Heart" mark was registered a year ago and thus is not incontestable and may be cancelled for any of the foregoing grounds, as set forth in the Lanham Act.

30.     Prior to and at the time MOPHSF registered the "Purple Heart" mark, it knew that myriad independent charitable causes and corporations organized under Chapter 501(c)(3) of the Internal Revenue Code actively utilized the phrase "Purple Heart" as part of their efforts to raise funds to benefit recipients of the Purple Heart medal.

31.     MOPHSF has known since at least March 2010 that Others First uses the phrase "Purple Heart" as part of its efforts to raise funds to benefit recipients of the Purple Heart medal.

32.     This action was commenced on May 16, 2012 by the filing of the Complaint against Others First. Subsequent to the filing of such complaint, MOPHSF, in a further effort to restrict fundraising for veterans and an improper attempt to corner the market for such fundraising activities on behalf of wounded veterans, filed yet another a Federal trademark application claiming to be the exclusive owner of the term "Purple Heart" for charitable fundraising services by means of selling donated vehicles to raise funds for wounded veterans, which has been assigned Serial No. 85648473, with a filing date of June 11, 2012.

33.     MOPHSF also filed a complaint with Google, a major advertising tool used by Others First, to enforce its claim to exclusive use of the term "Purple Heart." As a result, Google de-listed the Cars Helping Veterans website from its key word advertising and metatags, and it banned the Cars Helping Veterans program from using the phrase (and associated phrases) or the

depiction of the medal in its advertising. Donations to the Cars Helping Veterans program have suffered as a direct and proximate result.

34.     Upon information and belief, MOPHSF has not demanded and taken similar litigious action against the myriad other organizations across the United States who also use the Purple Heart term and depiction in their charitable efforts to raise funds for the benefit of wounded veterans.

35.     Upon information and belief, MOPHSF has singled out Others First for litigation based on punitive and improper motives.

36.     If MOPHSF's Registration is permitted to stand, it will have a chilling effect on the ability of myriad organizations nationwide to raise charitable funds for the benefit of wounded veterans, including recipients of the Purple Heart medal. If MOPHSF's pending application is permitted to mature to registration, it will have yet another poison arrow to aim at the fundraising community serving wounded and decorated veterans.

37.     On information and belief, an array of charitable organizations use the Purple Heart term and depiction to generically and accurately describe their efforts to raise funds to benefit Purple Heart recipients. Similarly, and also on information and belief, an array of organizations not associated with charitable fundraising use the Purple Heart term and depiction to associate their services with recipients of the Purple Heart medal. By way of non-exclusive examples, on information and belief:

  a.     the Merrick Lions Club sponsors a "Purple Heart Pups" program (www.purpleheartpups.org) to provide service dogs to eligible veterans;

  b.     Marine Parents sponsors a "Purple Heart Family Support" outreach program (www.purpleheartfamilies.com) that depends on direct donations;

c.      the Phoenix Patriot Foundation (www.phoenixpatriotfoundation.org) sponsored a "Purple Heart Challenge" in November 2011;

d.      the San Jose Zouaves Rifle Club (www.zouaves.orf) sponsors an annual "Purple Heart Match" to raise funds for eligible veterans;

e.      Alaska's Healing Hearts (www.alaskashealinghearts.com) uses the Purple Heart phrase and depiction to raise funds to provide outdoor recreational programs for eligible veterans.

f.      Purple Heart Patient Center (www.purpleheartpc.org) is a California-based business that, according to its website, provides "safe and affordable access to a variety of cannabis medicines" and its logo is a marijuana leaf with a Purple Heart medal in the center; and

g.      Purple Heart Pawn & Gun (www.purpleheartpawn.com) is a Texas-based business involved in making pawn loans and the sale and trade of firearms, gold, jewelry, and electronics and its logo utilizes both the Purple Heart phrase and a depiction of the medal

38.      This proliferation of uses show that neither the term "Purple Heart" nor the depiction of the Purple Heart medal function as an indication of origin in a single source, and thus the public would not be expected to perceive either the term "Purple Heart" or the depiction of the Purple Heart medal as an indication that Counterclaim Defendant is the source of all those services.

<u>COUNT I</u>

39.     The allegations of Paragraphs 1 through 35 of these Counterclaims, the foregoing Answer, and Affirmative Defense No. 8 are incorporated and re-alleged by reference as if fully set forth herein.

40.     This is a counterclaim for cancellation of MOPHSF's Registration No. 4015788 for the mark PURPLE HEART.

41.     Others First is likely to be damaged by continued registration of MOPHSF's U.S. Trademark Reg. No. 4015788 for the mark PURPLE HEART in that MOPHSF relies in part on said registration in the instant Complaint seeking injunctive and monetary relief against Others First, in that such registration was improperly issued by the U.S. Patent and Trademark Office since the subject trademark is generic. Others First is likely to be damaged by continued registration of said term in that the prima facie evidentiary effect of such registration impairs Others First's right to use the term "Purple Heart" in its charitable fund raising activities on behalf of wounded recipients of the Purple Heart medal and others.

WHEREFORE, the Counterclaim Plaintiff Others First prays that this Court exercise its power under 15 U.S.C.A. § 1119 to order the Commissioner for Trademarks to cancel such registration and for such further relief as the Court may deem just.

<u>COUNT II</u>

42.     The allegations of Paragraphs 1 through 38 of these Counterclaims, the foregoing Answer, and Affirmative Defense No. 9 are incorporated and re-alleged by reference as if fully set forth herein.

43.     This is a counterclaim for cancellation of MOPHSF's Registration No. 4015788 for the mark PURPLE HEART.

44.     Others First is likely to be damaged by continued registration of MOPHSF's U.S. Trademark Reg. No. 4015788 for the mark PURPLE HEART in that counterclaim Defendant relies in part on said registration in the instant Complaint seeking injunctive and monetary relief against Others First, in that such registration was improperly issued by the U.S. Patent and Trademark Office since the subject trademark is generic, or at least merely descriptive of the services covered by such registration and was not registered under section 2(f) on the basis of acquired distinctiveness, nor was proof of acquired distinctiveness or secondary meaning required during prosecution. Others First is likely to be damaged by continued registration of said term in that the prima facie evidentiary effect of such registration impairs Others First's right to use the term "Purple Heart" in its charitable fund raising activities on behalf of wounded recipients of the Purple Heart medal and others.

WHEREFORE, the Counterclaim Plaintiff Others First prays that this Court exercise its power under 15 U.S.C.A. § 1119 to order the Commissioner for Trademarks to cancel such registration and for such further relief as the Court may deem just.

## COUNT III

45.     The allegations of Paragraphs 1 through 41 of these Counterclaims, the foregoing Answer, and Affirmative Defense No. 10 are incorporated and re-alleged by reference as if fully set forth herein.

46.     This is a counterclaim for cancellation of MOPHSF's Registration No. 4015788 for the mark PURPLE HEART.

47.     Others First is likely to be damaged by continued registration of MOPHSF's U.S. Trademark Reg. No. 4015788 for the mark PURPLE HEART in that MOPHSF relies in part on said registration in the instant Complaint seeking injunctive and monetary relief against

Others First, in that such registration was improperly issued by the U.S. Patent and Trademark Office since to the extent that any exclusive rights in the generic or merely descriptive term "Purple Heart" can be asserted, MOPHSF is not the owner of such right.

48.     Counterclaim Plaintiff Others First is likely to be damaged by continued registration of the term "Purple Heart" in that the prima facie evidentiary effect of such registration impairs Others First's right to use the term "Purple Heart" in its charitable fund raising activities on behalf of wounded recipients of the Purple Heart medal and others.

WHEREFORE, the Counterclaim Plaintiff Others First prays that this Court exercise its power under 15 U.S.C.A. § 1119 to order the Commissioner for Trademarks to cancel such registration and for such further relief as the Court may deem just.

## COUNT IV

49.     The allegations of Paragraphs 1 through 45 of these Counterclaims, the foregoing Answer, and Affirmative Defense No. 11 are incorporated and re-alleged by reference as if fully set forth herein.

50.     This is a counterclaim for cancellation of MOPHSF's Registration No. 4015788 for the mark PURPLE HEART.

51.     Others First is likely to be damaged by continued registration Service Foundation's U.S. Trademark Reg. No. 4015788 for the mark PURPLE HEART in that MOPHSF relies in part on said registration in the instant Complaint seeking injunctive and monetary relief against Others First, in that such registration was improperly issued by the US Patent and Trademark Office and is subject to cancellation on the grounds that MOPHSF's application was based on a fraudulent misrepresentation to the US Patent and Trademark Office made with the willful intent to deceive as it was based on and included a declaration that was

knowingly false, to the effect that it had "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof to in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake or to deceive," which declaration was made in order to obtain registration of the alleged mark PURPLE HEART, when in fact the term forms a part of the official name of a separate entity, the Military Order of the Purple Heart of the United States, pursuant to an Act of Congress, and can be used fairly and descriptively by others to refer to recipients of the Purple Heart medal.

52.     Upon information and belief, MOPHSF had knowledge that other third parties and charitable organizations currently use and have used "Purple Heart" in connection with charitable fundraising for veterans who received the Purple Heart Medal.

53.     Counterclaim Plaintiff Others First is likely to be damaged by continued registration of the term "Purple Heart" in that the prima facie evidentiary effect of such registration impairs Others First's right to use the term "Purple Heart" in its charitable fund raising activities on behalf of wounded recipients of the Purple Heart Medal and others.

54.     WHEREFORE, the Counterclaim Plaintiff Others First prays that this Court exercise its power under 15 U.S.C.A. § 1119 to order the Commissioner for Trademarks to cancel such registration and for such further relief as the Court may deem just.

<u>COUNT V</u>

55.     The allegations of Paragraphs 1 through 51 of these Counterclaims, the foregoing Answer, and Affirmative Defense No. 14 are incorporated and re-alleged by reference as if fully set forth herein.

56.     This is a counterclaim for cancellation of MOPHSF's Registration No. 4015788 for the mark PURPLE HEART.

57.     Others First is likely to be damaged by continued registration of MOPHSF's U.S. Trademark Reg. No. 4015788 for the mark PURPLE HEART in that MOPHSF relies in part on said registration in the instant Complaint seeking injunctive and monetary relief against Others First, in that such registration was improperly issued by the U.S. Patent and Trademark Office and is subject to cancellation on the grounds that MOPHSF's claims for relief are barred in whole or in part as a result of its misuse of the trademarks, acts of unfair competition and anticompetitive behavior consisting of deliberately misrepresenting the validity and scope of its asserted fraudulently procured Registration against other entities engaged in fundraising efforts on behalf of recipients of the Purple Heart medal and other wounded veterans in violation of the Sherman Act § 2 (15 U.S.C. § 2).

58.     Counterclaim Plaintiff Others First is likely to be damaged by continued registration of the term "Purple Heart" in that the prima facie evidentiary effect of such registration impairs Others First's right to use the term "Purple Heart" in its charitable fund raising activities on behalf of wounded recipient of the Purple Heart Medal and others.

WHEREFORE, the Counterclaim Plaintiff Others First prays that this Court exercise its power under 15 U.S.C.A. § 1119 to order the Commissioner for Trademarks to cancel such registration and for such further relief as the Court may deem just.

## COUNT VI

59.     The allegations of Paragraphs 1 through 55 of these Counterclaims, the foregoing Answer, and Affirmative Defenses are incorporated and re-alleged by reference as if fully set forth herein.

60.     This count seeks an order of this Court barring MOPHSF from securing a Federal trademark registration for the term "Purple Heart" and to finally refuse MOPHSF's pending Application S/N 85648473 on the following grounds:

61.     MOPHSF's pending U.S. Trademark Application S/N 85648473 for the mark PURPLE HEART is invalid and seeks to perpetrate a fraud upon the U.S. Patent and Trademark Office in that MOPHSF is not the exclusive owner of the term "Purple Heart" and thus the application should be denied and refused.

62.     MOPHSF's pending U.S. Trademark Application S/N 85648473 for the mark PURPLE HEART is not entitled to registration in that the term "Purple Heart" is generic and not capable of exclusive appropriation and thus the application should be denied and refused.

63.     MOPHSF's pending U.S. Trademark Application S/N 85648473 for the mark PURPLE HEART is not entitled to registration in that the term "Purple Heart" is aptly descriptive and has not acquired secondary meaning and thus is not capable of exclusive appropriation and therefore the application should be denied and refused.

WHEREFORE, the Defendant and Counterclaim-Plaintiff, Others First, Inc., prays that this court exercise its power under 15 U.S.C.A. § 1119 to order the Commissioner for Trademarks to cancel Registration No. 4015788 and to deny registration of pending application No. S/N 85648473, to award attorneys' fees and costs incurred herein, and for such further relief as the court may deem just.

Dated:  September 20, 2012                    Respectfully Submitted,

                                              **OTHERS FIRST, INC.**

                                              By:     /s/ John C. Lynch
                                                           Of Counsel

John C. Lynch (MD Bar No. 12963)
TROUTMAN SANDERS, LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Alan M. Freeman (MD Bar Bo. 13147)
BLANK ROME LLP
600 New Hampshire Ave., NW
Washington, D.C. 20037
Telephone: (202) 772-5800
Facsimile: (202) 572-8370
E-mail: freeman@blankrome.com

*Counsel for Defendant Others First, Inc.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2012, I electronically filed a true and correct copy of Others First, Inc.'s Answer and Counterclaim to Plaintiff's Amended Complaint with the Clerk of the Court using the CM/ECF System, which will send notification of such filing (NEF) to the following:

**<u>Counsel for Plaintiff</u>**
Richard I. Kovelant
KOVELANT LAW OFFICES LLC
1957 Valley Rd.
Annapolis, MD 21401
E-mail: rick@kovelantlaw.com

Nicole M. Murray (*pro hac vice* pending)
QUARLES & BRADY LLP
300 North LaSalle St., Suite 4000
Chicago, Illinois 60654
E-mail: Nicole.murray@quarles.com

/s/ John C. Lynch
John C. Lynch (MD Bar No. 12963)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Alan M. Freeman (MD Bar Bo. 13147)
BLANK ROME LLP
600 New Hampshire Ave., NW
Washington, D.C. 20037
Telephone: (202) 772-5800
Facsimile: (202) 572-8370
E-mail: freeman@blankrome.com

*Counsel for Defendant Others First, Inc.*

20109025v1